UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALEX NANCE, 01-B-0757,

        Petitioner,

      -v-                          06-CV-0615(MAT)
                                          **ORDER**

JAMES T. CONWAY,

        Respondent.

_____

## I.   Introduction

Petitioner Alex Nance ("petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on March 14, 2001, of two counts of Murder in the Second Degree (N.Y. Penal L. § 125.25(1), (3)), and one count each of Robbery in the First Degree (Penal L. § 160.15(1)) and Intimidating a Witness in the Third Degree (Penal L. § 215.15(1)). Following a jury trial in Erie County Court before Judge Shelia DiTullio, petitioner was sentenced as a second felony offender to an aggregate term of incarceration of twenty-seven years to life. Sentencing Mins at 9-10.

## II.  Factual Background and Procedural History

Petitioner's conviction arises out of the beating death of Gary Trzaska ("the victim") in the vicinity of Broadway Street and Titus Avenue in Buffalo, New York.

On or about October 2, 1998, three cousins, petitioner, William Nance ("Nance"), and Lorenzo Jones ("Jones"), walked to

another cousin's house to "get some money" for drinks. T. 347-58.[1] On the way, they encountered the victim walking across the street in their direction. According to Nance[2], petitioner initially punched the victim. T. 361-62. When the victim fell to the ground, he was repeatedly kicked by all three men in his head and body. T. 362-64. During the beating, petitioner dragged a set of three connected chairs from outside of a laundromat, which Jones raised up and forcefully threw onto the victim's head. Petitioner and Jones then continued to jump on the victim. T. 367. After the beating, Nance observed petitioner reach into the victim's pockets and remove something. T. 369.

In addition to Nance's testimony, three witnesses testified that petitioner confessed to the crime. T. 61, 67, 509, 513-15, 613-14, 618. The prosecution also presented four witnesses that observed the victim being beaten. T. 85-87, 89, 236-37, 240-41, 245, 288-96. Petitioner did not testify at trial.

Through counsel, petitioner appealed the judgment of conviction to the Appellate Division, Fourth Department, raising the following points: (1) ineffective assistance of trial counsel; (2) the admission of television cameras in the courtroom deprived

---

[1] Citations to "T.__" refer to pages of the trial transcript.

[2] William Nance received a plea agreement to Manslaughter in the First Degree with a sentence commitment of twenty years, conditioned upon testifying truthfully about the beating death of the victim. T. 396-98. Nance had initially implicated Dennis Straughter ("Straughter") in the beating, whose indictment was ultimately dismissed. T. 65-66.

petitioner of a fair trial; (3) the prosecution committed a <u>Rosario</u> violation; (4) the conviction was against the weight of the evidence; and (5) the sentence was harsh and excessive. <u>See</u> Petitioner's ("Pet'r") Appellate Br. 18-67. The Fourth Department unanimously affirmed the conviction. <u>People v. Nance</u>, 2 A.D.3d 1473 (4th Dept. 2003); <u>lv. denied</u> 2 N.Y.3d 764 (2004).

While his direct appeal was pending, petitioner sought to vacate his conviction pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10 on the grounds of ineffective assistance of counsel and that the prosecution failed to turn over <u>Rosario</u> / <u>Brady</u> material to the defense. The county court denied that motion without a hearing. <u>See</u> Memorandum and Order, No. 98-2415-002 dated 12/2/2003. Leave to appeal that denial was denied by the Appellate Division on May 12, 2005.

On June 12, 2004, petitioner filed a second C.P.L. § 440.10 motion alleging that the court erred in submitting inconsistent counts of murder to the jury[3], and that his attorney failed to object to that submission. The county court denied petitioner's motion as moot and on procedural grounds. <u>See</u> Memorandum and Order, No. 98-2415-002 dated 1/4/2005. Leave to appeal was denied on May 12, 2005.

---

[3] The first count of the indictment charged petitioner with intentional murder (Penal L. § 125.25(1)) and the second count of the indictment charged him with depraved indifference murder (Penal L. § 125.25(2)). The counts were submitted to the jury in the alternative, and petitioner was convicted under the theory of intentional murder.

By motion for a writ of *error coram nobis*, petitioner alleged that his appellate counsel did not afford him effective representation. The Fourth Department denied that motion, Nance, 26 A.D.3d 902 (4th Dept.), and leave to appeal its denial was denied by the New York Court of Appeals. 7 N.Y.3d 760 (2006).

Petitioner then filed a timely petition for writ habeas corpus pursuant to 28 U.S.C. § 2254, raising the following claims: (1) ineffective assistance of trial counsel; (2) the admission of television cameras in the courtroom deprived petitioner of his right to a fair trial; (3) the prosecution committed a Rosario/Brady violation; (4) insufficiency of the evidence; and (5) the prosecution knowingly used false testimony at trial. See Petition ("Pet.") at Attach. 5-10; Pet'r Mem. 1-14. (Dkt. ## 1, 15).

For the reasons that follow, the petition is denied and the action is dismissed.

## III. Discussion

### A.  General Principles

#### 1.  Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme

Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

### 2. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048(1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

### B. Merits of the Petition

#### 1. Cameras in the Courtroom Deprived Petitioner of a Fair Trial

Petitioner contends that he was deprived of a fair trial

because his murder trial was televised by a local news station. Pet. at Attach. #5; Pet'r Mem. at 3-4. Petitioner's argument relies on a New York State law effectively prohibiting the televising of courtroom proceedings since the rules permitting cameras expired in 1997. See N.Y. Civil Rights Law § 52; N.Y. Judiciary Law § 218.[4] The Appellate Division held that, although the trial court lacked the authority to permit the television stations to videotape or broadcast the trial, absent a showing of actual prejudice, the appellate court could not conclude that petitioner was denied a fair trial. Nance, 2 A.D.3d at 1474 (citing Santiago v. Bristol, 273 A.D.2d 813, 814 (4th Dept. 2000); Chandler v. Florida, 499 U.S. 560, 581-82 (1981)).

The Supreme Court in Chandler v. Florida, 449 U.S. 560 (1981), held that there is no constitutional rule barring photographs, radio or television coverage of a trial. Rather, a defendant must demonstrate that the television coverage prejudiced him:

> [A] defendant has the right on review to show that the media's coverage of his case-printed or broadcast-compromised the ability of the jury to judge him fairly. Alternatively, a defendant might show that broadcast coverage of his particular case had an adverse impact on the trial participants sufficient to constitute a denial of due process.

---

[4] Under N.Y. Civil Rights Law § 52, cameras and recording equipment are prohibited from New York's courtrooms, with the exception of an interval between 1987 and 1997, when Judiciary Law § 218 was in effect. See Courtroom Television Network, LLC. v. State of New York, 5.N.Y.3d 222, 233-34 (2005). Under § 218, "the court system itself exercised control over the means of access to proceedings made available to broadcast media . . . ." Id. at n6. Judiciary Law § 218 has not been reenacted, and the ban provided by N.Y. Civil Rights Law § 52 is still in effect.

<u>Chandler</u>, 449 U.S. at 581.  Moreover, the <u>Chandler</u> court reasoned that, "[t]o demonstrate prejudice in a specific case a defendant must show something more than juror awareness that the trial is such as to attract the attention of broadcasters.  <u>Id.</u> (citing <u>Murphy v. Florida</u>, 421 U.S. 794, 800 (1975)).

In his memorandum of law, petitioner cites to <u>Estes v. State of Texas</u>, 381 U.S. 532 (1965)  in which the Supreme Court held that a defendant was deprived of his right to due process where his "heavily publicized" and "highly sensational" criminal trial was televised. <u>Estes</u>, 381 U.S. at 590. As respondent correctly points out, such is not the case here. Petitioner has not shown, nor has he even alleged,  that the presence of the television cameras at his trial turned the trial into a "carnival" atmosphere, or that the jury or witnesses were influenced by the television coverage. <u>See</u> <u>Willard v. Pearson</u>, 823 F.2d 1141, 1147-48 (7th Cir. 1987). Rather, petitioner merely concludes that petitioner was deprived of a fair trial because the trial court exceeded its authority under § 52 of the Civil Rights law. In fact, petitioner acknowledged in his appellate brief, "[w]hat effect the presence of the cameras had on [the witnesses] cannot be determined from the record" and that "[t]he record does not reveal anything about the coverage aired to the public about this case."  Pet'r Appellate Br. at 41.

I need not determine the issue of whether the press coverage in petitioner's case influenced the jury, because petitioner has

not made such a claim. Rather, petitioner has alleged an error of state law, and federal courts sitting on habeas review "are not forums in which to relitigate state trials." <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983). Regardless of whether the county court lacked the authority to permit filming of petitioner's trial, he has not alleged a constitutional violation for habeas review.  This claim is therefore dismissed.

### 2.  **<u>Brady</u> Violation**

Petitioner claims here, as he did on direct appeal and in his C.P.L. § 440 motion in county court, that the prosecutor failed to turn over a statement given by a witness, April Hyatt ("Hyatt"), to a private investigator regarding the identification of a former co-defendant, Dennis Straughter.  Pet. at Attach. #6- #9;  Pet'r Mem. at 10-11. At trial, Hyatt testified that she initially identified Straughter from a photo array and a lineup as one of the perpetrators of the beating. After Straughter was charged, Hyatt told investigators that she had misidentified Straughter as a result of a previous encounter with him earlier that day at the pizzeria where she worked.  She could not recall if she signed a statement to that effect.  The prosecutor provided the investigator's notes (which referred to a signed statement) to the defense, but advised the trial court that the prosecution had no such signed statement in its possession. T. 247-48.

In his § 440 motion, petitioner attached an undated letter

from the investigator stating that Hyatt signed an affidavit which was turned over to Straughter's attorney. The statement, however, was not included in his supporting documents accompanying his motion to vacate. <u>See</u> Memorandum and Order, No. 98-2415-002 dated 12/2/2003. As a result, the county court rejected petitioner's <u>Rosario</u> claim on the merits. Similarly, the Appellate Division held that "[t]here is no evidence that the trial prosecutor ever had possession or control of the witness's prior statement, which had been given to a private investigator and an attorney for a third party." 2 A.D.3d at 1474 (citations omitted).

The <u>Rosario</u>[5] rule, codified at C.P.L. § 240.45, is a New York State law discovery rule, and "requires generally that the People provide defense counsel with all pretrial statements of prosecution witnesses." <u>People v. Ranghelle</u>, 69 N.Y.2d 56, 57, (1986). The standards used to determine whether a <u>Brady</u> or a <u>Rosario</u> violation has occurred are different, since "<u>Brady</u> . . . involves a constitutional principle . . . [while] the <u>Rosario</u> rule is based upon policy considerations and a right sense of justice, not constitutional mandates or guarantees . . . ." <u>People v. Howard</u>, 127 A.D.2d 109, 117 (1st Dept. 1987) (internal quotations and citations omitted). As such, a <u>Rosario</u> violation is not a federal constitutional claim cognizable on habeas review because it

---

[5] <u>People v. Rosario</u>, 9 N.Y.2d 286 (1961) (prosecutor has obligation, prior to trial, to make available to defendant any written or recorded statements made by a person whom prosecutor intends to call as a witness at trial, and which relates to the subject matter of witness's testimony).

implicates a state law right. <u>Goston v. Rivera</u>, 462 F.Supp.2d 383 (W.D.N.Y. 2006) (citing <u>Lyon v. Senkowski</u>, 109 F.Supp.2d 125, 139 (W.D.N.Y. 2000). The <u>Brady</u> rule, on the other hand, derives from constitutional due process principles and requires the prosecution to disclose evidence favorable to the defendant even though there has been no request by defendant, and encompasses impeachment evidence as well as exculpatory evidence. <u>E.g.</u>, <u>Strickler v. Greene</u>, 527 U.S. 263, 280-81 (1999). A <u>Brady</u> violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Id.</u> at 281-82.

To echo the state court decisions, the petitioner did not demonstrate that the prosecution was ever in possession of the alleged statement. The record is clear on this matter. Because there was not a "suppression" of the material, it cannot be said that there is a <u>Brady</u> violation before the Court. Assuming, *arguendo*, the witness did in fact sign such a statement, it only serves to duplicate her testimony that she initially implicated someone other than petitioner. She was extensively cross-examined on this matter at trial by defense counsel. T. 250-78. Thus, petitioner would not have been able to establish that prejudice resulted had the statement existed and been suppressed. In

rejecting petitioner's claim, the state courts did not unreasonably apply or render a decision that was contrary to firmly established federal law.

### 3.    Ineffective Assistance of Trial Counsel

Petitioner claims that he received constitutionally ineffective assistance of trial counsel. He contends, *inter alia*, that: (1) trial counsel failed to research whether it was permissible for the court to allow television cameras in the courtroom during trial; (2) trial counsel failed preserve petitioner's right to testify at the grand jury; and (3) trial counsel failed to obtain a statement from a prosecution witness.[6] See Pet at Attach. ##5, 7; Pet'r Mem. at 8, 13 (Dkt. ## 1, 15).

The Appellate Division, Fourth Department, found that petitioner received meaningful representation. Nance, 2 A.D.3d at 1474-75. With respect to petitioner's argument that his attorney unilaterally waived petitioner's right to testify at the grand jury without his consent, the county court held that "[petitioner] has not shown, or even alleged, that his testimony would have affected the result of the grand jury proceedings." Memorandum and Order, No. 98-2415-002, dated 12/2/2003 (citing People v. Williams, 291

---

[6] Enveloped in his ineffective assistance of trial counsel claim is a sub-claim that appellate counsel was ineffective for failing to present a meritorious issue on appeal. Namely, that trial counsel was ineffective for failing to obtain the statement allegedly made by a prosecution witness. The merits of this claim need not be addressed in this Decision and Order because the record reflects that appellate counsel did raise the issue on direct appeal. See Pet'r Appellate Br. at 46-50.

A.D.2d 347 (1st Dept. 2002)).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

### a. Failure to Research the Issue of Televised Trials in New York

Petitioner claims that he received ineffective assistance of counsel in violation of the Sixth Amendment because his trial attorney did not adequately investigate New York law with respect to the rules governing the filming and broadcasting of trials. Pet.

at Attach. #5. After reviewing the record, I find that petitioner's claim regarding his attorney's unawareness of N.Y. Civil Rights Law § 52, which generally prohibits cameras in New York's courtrooms, is unpersuasive. First, petitioner's attorney, Alan Goldstein ("Goldstein"), represented petitioner in an overall effective and zealous manner. He made the appropriate pre-trial motions and arguments throughout all stages of the trial. With respect to the issue of television cameras being permitted by the court during the trial, Goldstein vociferously objected to their presence. T.12. The court noted Goldstein's exception and, albeit erroneously, determined that permission to allow television cameras in the courtroom was within the discretion of the trial court, and that the coverage would be "strictly controlled". T. 17.

As discussed above, <u>see</u> part III.B.1., petitioner suffered no prejudice from the filming and broadcast of his trial. Thus, even if Goldstein did fail to research the prohibition set forth by N.Y. Civil Rights Law § 52, the omission did not prejudice the outcome of petitioner's trial given the totality of the evidence presented to the judge and jury. <u>See</u> <u>Strickland</u>, 466 U.S. at 688, 694-95.

### b. Failure to Preserve Petitioner's Right to Testify in the Grand Jury

With respect to petitioner's claim that he desired to testify before the grand jury, the record does not support that fact. In a letter to petitioner from his trial attorney dated July 10, 2001, counsel advised petitioner against testifying in the grand jury,

and elected not to have petitioner testify. <u>See</u> Motion dated 6/30/2003 at Ex. C. Petitioner has not shown the lack of strategic or other legitimate explanation for defense counsel's conduct. <u>Strickland</u>, 466 U.S. at 681, 688-89. Nor has he explained what he would have testified to or how his testimony would have changed the result of the proceedings. Petitioner's claim on this ground is therefore dismissed.

### c.    Failure to Obtain a Witness Statement

The record similarly does not support petitioner's claim that a constitutional violation occurred because trial counsel did not obtain the allegedly sworn statement of a witness, April Hyatt, made to a private investigator. Petitioner's counsel requested the statement from the prosecutor at trial, and the prosecutor indicated that he did not have such a statement. Petitioner's claim on this ground is belied by the record because counsel properly requested the alleged document as <u>Rosario</u> material, and, in any event, there is nothing in the record to demonstrate that such a statement actually existed. T. 247-48. Petitioner has not shown that counsel's conduct was deficient in this instance.

In sum, petitioner's claims that his trial counsel was ineffective are individually and collectively without merit. The state courts did not unreasonably apply <u>Strickland v. Washington</u> in determining that petitioner did not receive constitutionally ineffective assistance of counsel.

**4. Sufficiency of the Evidence**

Petitioner contends that the evidence was legally insufficient to support petitioner's conviction  Pet. at Attach. #6. This claim is raised for the first time in the instant petition, and is therefore unexhausted. In his memorandum, petitioner argues that his claim "does not have to be exhausted since the challenging of the sufficiency of the evidence that convicts a person is one of the most basic and fundamental rights under the United States Constitution." Pet'r Mem. at 7.  Petitioner apparently labors under a misunderstanding of the exhaustion doctrine in habeas corpus proceedings.  In any event, the Court may deny petitioner's unexhausted claims on the merits[7], despite petitioner's failure to exhaust state court remedies where he has presented a mixed petition, i.e., containing both exhausted and unexhausted claims. 28 U.S.C. § 2254(b)(2).

In reviewing a claim of sufficiency of the evidence, a habeas court must  review the evidence in the light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[7] Neither the Supreme Court nor the Second Circuit adopted any standard for denying unexhausted claims on the merits. E.g., Sherwood v. Cunningham, No. 07 Civ. 6588(SAS), 2009 WL 790085, at *4 (S.D.N.Y. Mar. 25, 2009). The Second Circuit initially adopted the "patently frivolous" standard in Jones v. Senkowski, 2002 WL 246451 (2d Cir. 2002). However, that decision was later vacated and withdrawn, Jones v. Senkowski, No. 00-2145, 2002 WL 246451 (2d Cir. May 22, 2002), amended by Jones v. Senkowski, No. 00-2145, 42 Fed. Appx. 485, 2002 WL 1032589 (2d Cir. May 22, 2002), cert. denied, 537 U.S. 1177 (2003). Some of the decisions in the "patently frivolous" line relied on Jones. Naranjo v. Filion, No. 02 Civ. 5449, 2003 WL 1900867, at *8 n.14 (S.D.N.Y. Apr. 16, 2003) (collecting cases).

doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). It must be determined whether the record is "so totally devoid of evidentiary support that a due process issue is raised." <u>Mapp v. Warrden, N.Y. State Corr. Inst. for Women</u>, 511 F.2d 1167, 1173 n.8 (2d Cir. 1976), <u>see also</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 830 (2d Cir. 1994).

Here, petitioner essentially attacks the credibility of multiple prosecution witnesses that testified at trial. "[A] conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility." <u>United States v. Strauss</u>, 999 F.2d 692, 696 (2d Cir. 1993) (citations omitted). A federal habeas court must therefore "resolve all issues of credibility[ ] in favor of the jury's verdict." <u>United States v. Reyes</u>, 157 F.3d 949, 955 (2d Cir. 1998). <u>Huber v. Schriver</u>, 140 F.Supp.2d 265, 277 (E.D.N.Y. 2001) ("[F]ederal habeas courts 'are not free to reassess the [fact-specific] credibility judgments by juries or to weigh conflicting testimony.... [A federal habeas court] must presume that the jury resolved any questions of credibility in favor of the prosecution.'") (quoting <u>Vera v. Hanslmaier</u>, 928 F.Supp. 278, 284 (S.D.N.Y. 1996)). A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact. <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983); <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996). This rule

applies to credibility determinations made by juries with respect to identification testimony. <u>Vera v. Woods</u>, No. 06-CV-1684 (JFB), 2008 WL 2157112, at *9 (E.D.N.Y. May 21, 2008) (citations omitted).

William Nance, petitioner's cousin who was present at the crime scene and participated in the beating, testified explicitly about the incident. Petitioner had confessed to the crime to three separate individuals, all of whom testified consistently with other trial testimony. A friend of petitioner, Sheena King, recalled at trial the events before and after the killing, and that testimony was consistent with the other evidence presented at trial. Finally, the prosecution presented four people that witnessed the victim being beaten. Each witness consistently recounted the details of the beating, and identified the clothing worn by the perpetrators. The jury evaluated all the testimony and subsequently found petitioner guilty of the crimes of which he was convicted. Under these circumstances, there is no basis to disturb the jury's finding. <u>Accord, e.g.</u>, <u>Vera</u>, 2008 WL 2157112, at *10 (citing <u>United States v. Valenzuela</u>, 722 F.2d 1431, 1433 (9th Cir. 1983) ; <u>Gruttola v. Hammock</u>, 639 F.2d 922, 928 (2d Cir. 1981) ("[T]he jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses .... We cannot say that no rational jury could have found

guilt beyond a reasonable doubt on all the evidence.").

Petitioner's challenge to the witnesses' credibility does not support a claim of legal insufficiency on habeas review in light of the Court's review of the entire record of this case, and is dismissed as patently frivolous.

### 5.  Use of Perjured Testimony at Trial

In his *pro se* supplemental brief on appeal, petitioner argued to the Appellate Division that the prosecutor failed to correct "materially false" testimony of Buffalo Police detective Robert Chella ("Chella") at trial, thereby depriving him of his right to due process and a fair trial. Pet. at Attach. #10. The appellate court concluded that petitioner's claim was without merit. 2 A.D.3d at 1474.

Chella testified that he had interviewed petitioner on November 25, 1998. Petitioner was read his rights and indicated that he would speak to detectives. Chella took three pages of notes of the discussion with petitioner, in which petitioner told Chella that he, Jones, and Nance had seen a gentleman walking down the street. Jones mentioned that he wanted to "punk" somebody, and walked up to the victim and punched him. Then all three men continued to assault the victim. T. 614. Petitioner recalled what the victim was wearing. When Chella decided to reduce the conversation to writing, petitioner recanted his story, Chella did not obtain a signed statement from petitioner, and petitioner was

taken home. T. 616-17. Petitioner avers that because he was released and not immediately arrested on the basis of his statement to police, Chella's testimony was false.

Clearly, petitioner has not established that Detective Chella committed perjury. See United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (in the context of a motion for a new trial based upon newly discovered evidence of trial perjury, "the appellants must first demonstrate that the witness in fact committed perjury") (citing United States v. Torres, 128 F.3d 38, 49 (2d Cir. 1997)). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." Id. (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." Id. (citing United States v. Sanchez, 969 F.2d 1409, 1414-15 (2d Cir.1992)). Whether "the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of the perjury." Id. (quoting United States v. Wallach, 935 F.2d 445, 457 (2d Cir. 1991)). If the prosecution was unaware of the perjury at the time of trial, the defendant must "show that the jury probably would have acquitted in the absence of the false testimony" to prevail on his motion for a new trial.

<u>Torres</u>, 128 F.3d at 49. If the prosecution knew or should have known of the perjury, a new trial is warranted "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." <u>Id.</u> (internal quotation marks and citation omitted).

Here, petitioner has not even created a credibility issue with respect to Chella's testimony. Moreover, the record reflects that the prosecution had a substantial case against petitioner. Thus, even if it were found that Chella's testimony was false, which I do not find to be the case, a new trial would not be warranted where "independent evidence supports a defendant's conviction[.]" <u>U.S. v. Wong</u>, 78 F.3d 73, 82 (2d Cir. 1996). Accordingly, the Appellate Division's rejection of petitioner's perjury claim is not contrary to, or an unreasonable application of Supreme Court precedent.

## IV. Conclusion

For the reasons stated above, Alex Nance's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies

leave to appeal as a poor person.  <u>Coppedge v. United States</u>, 369

U.S. 438 (1962).

**SO ORDERED.**

   s/Michael A. Telesca   
MICHAEL A. TELESCA
United States District Judge

Dated:    January 26, 2010
             Rochester, New York